UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
———————————————————————X

In Re:                                          Chapter 11

CROSS ISLAND PLAZA, INC., *et al.*              Case No. 12-42491 (NHL)
                                                Jointly Administered

         Debtors.

———————————————————————X

DLJ MORTGAGE CAPITAL, INC.,                     Adv. Pro. No.: 12-01208 (NHL)
                        Plaintiff,
         -against-
CROSS ISLAND PLAZA, INC., BLOCK 12892
REALTY CORP., and US BANK NATIONAL
ASSOCIATION, AS TRUSTEE, SUCCESSOR TO
WELLS FARGO BANK, N.A., AS TRUSTEE
FOR THE REGISTERED HOLDERS OF
WACHOVIA BANK COMMERCIAL
MORTGAGE TRUST, COMMERCIAL
MORTGAGE PASSTHROUGH CERTIFICATES,
SERIES 2006-C28,
                        Defendants.

———————————————————————X

ROBERT L. GELTZER, Trustee of                   Adv. Pro. No.: 13-01082 (NHL)
CROSS ISLAND PLAZA, INC., et al.,
                        Plaintiff,
         -against-
CROSS ISLAND PLAZA, INC., BLOCK 12892
REALTY CORP., and US BANK NATIONAL
ASSOCIATION, AS TRUSTEE, SUCCESSOR TO
WELLS FARGO BANK, N.A., AS TRUSTEE
FOR THE REGISTERED HOLDERS OF
WACHOVIA BANK COMMERCIAL
MORTGAGE TRUST, COMMERCIAL
MORTGAGE PASSTHROUGH CERTIFICATES,
SERIES 2006-C28,
                        Defendants.

———————————————————————X

## DECISION ON MOTIONS TO DISMISS
## AND FOR SUMMARY JUDGMENT

**HONORABLE NANCY HERSHEY LORD**
**United States Bankruptcy Judge**

Before the Court are dispositive motions filed in a pair of adversary proceedings in the jointly administered cases of debtors Cross Island Plaza ("CIP") and Block 12982 Realty Corp. (individually "Block" and collectively the "Debtors").  DLJ Mortgage Capital, Inc. ("DLJ") and the Chapter 7 trustee of the Debtors' estates, Robert L. Geltzer (individually the "Trustee" and collectively the "Plaintiffs"), each filed a complaint against US Bank, as trustee, successor to Wells Fargo Bank, N.A., as trustee for the Registered Holders of Wachovia Bank Commercial Mortgage Trust, Commercial Mortgage Pass-through Certificates, Series 2006-C28 ("US Bank"), the defendant and counter-claimant.

The Plaintiffs and US Bank (collectively the "Parties") ask this Court to adjudicate their respective interests in certain real property located in Rosedale, New York.  The Court referred the Parties to mediation, which failed to result in a consensual resolution.  Consequently, the Court took the matter under advisement.[1]  For the reasons that follow, the Court determines that the Deed (defined *infra*) lacks a property description and is therefore void.  To the extent the Parties' claims are contingent upon this Court interpreting, reforming, or otherwise enforcing the Deed, said claims are denied.  Furthermore, US Bank's motion for partial summary judgment, based on its status as a successor in interest to a prior lien holder, is granted on the limited basis set forth herein.  Finally, Counts II and III of US Bank's amended counterclaim, which object to DLJ's proofs of claim, are dismissed for failure to state a claim.

---

[1] Following the failed mediation, the Court participated with the Parties in a series of chambers conferences.  These efforts also failed to produce a settlement.

2

## I.    **JURISDICTION**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), and the

Eastern District of New York standing order of reference dated August 28, 1986, as amended by

order dated December 5, 2012.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

This decision constitutes the Court's findings of fact and conclusions of law to the extent

required by Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## II.    **BACKGROUND**

The proceedings arise from a series of real estate transactions purporting to affect the

ownership of, and mortgage interests in, two properties.  Block 12980, the first parcel, is a

commercial complex on Brookville Boulevard.  An office building rests on Lot 1 (the

"Structure").  Lots 45, 47, 49, 51, 53, 57, and 58 adjoin the Structure and provide onsite parking.

(the "Onsite Parking Lot" and, together with the Structure, "Cross Island Plaza").  Located

nearby on Merrick Boulevard, the second parcel, consisting of Lots 10, 12, 16, 17, and 47 of

Block 12982, provides additional parking space for the Structure (the "Offsite Parking Lot" and,

together with Cross Island Plaza, the "Properties").  The Plaintiffs argue that US Bank only has a

mortgage against CIP's leasehold interest in both Properties.  In contrast, US Bank alleges its

mortgage encumbers CIP's fee simple interest in Cross Island Plaza and CIP's leasehold interest

in the Offsite Parking Lot.

On July 17, 1997, CIP executed a "Consolidation, Modification, Spreader and Extension

Agreement" (the "Original Mortgage") in favor of Lehman Brothers Holding, Inc. to consolidate

preexisting loans and mortgages into a single instrument. Original Mortgage, ECF No. 12-01208

Doc. 21-5.  The Original Mortgage had a face value of $19,125,000.[2] Guggenheim Aff. 3 ¶ 6,

ECF No. 12-01208 Doc. 21-4.  At the time, CIP owned the Structure and the Offsite Parking Lot;

its fee simple ownership of these lots predated the Original Mortgage's execution. Original

Mortgage 1 ¶ A, ECF No. 12-01208 Doc. 21-5; Guggenheim Aff. 3 ¶ 8, ECF No. 12-01208 Doc.

21-4.  However, the Original Mortgage only encumbered the Structure. Original Mortgage, 2 ¶

1.4(a)(1), ECF No. 12-01208 Doc. 21-5; Guggenheim Aff. 3 ¶ 7 ECF No. 12-01208 Doc. 21-4.

In August 2006, the Debtors engaged in a multipart transaction, whereby CIP and Block

purported to execute a sale/leaseback transaction (the "Sale/Leaseback"), and CIP obtained

financing from US Bank's predecessor in interest, Arbor Commercial Mortgage, LLC ("Arbor").

On August 1, 2006, Georgia Kontogiannis, as President of both CIP and Block, executed

a lease (the "Ground Lease") between Block, as landlord, and CIP, as tenant. Guggenheim Aff. 4

¶ 15, ECF No. 12-01208 Doc. 21-4.  The Ground Lease describes the affected property several

times, and each time is different:

(1) The cover of the Ground Lease states that it is a lease "[a]ffecting premises commonly
    known as Block 12982, Lots 1, 12, 16, 17, & 47, Queens County, City of New York"
    (i.e., the Offsite Parking Lot). Ground Lease 1, ECF No. 12-01208 Doc. 1-2.

(2) Section 1 of the Ground Lease identifies the "Demised Premises" as: "all of the land
    (the 'Land') described in Exhibit A hereto and designated as Block 12982, Lot 1, 12,
    16, 17 and 47 as shown on the map of Queens County" (i.e., the Offsite Parking Lot).
    Ground Lease 3, ECF No. 12-01208 Doc. 1-2.

(3) Notwithstanding the reference to an "Exhibit A" in Section 1 (and in the Table of
    Contents found on page 2), the Ground Lease does not contain an "Exhibit A."  Instead,
    there are two pages appended to the Ground Lease, labeled "Schedule A" and

---

[2] Dollar amounts are rounded to the nearest dollar, unless otherwise specified.

"Schedule A2," which provide metes and bounds descriptions for Cross Island Plaza

and the Offsite Parking Lot, respectively. Ground Lease, ECF No. 12-01208 Doc. 1-2.

In sum, the cover and body of the Ground Lease identify the Offsite Parking Lot by block and lot

numbers, while the schedules in lieu of "Exhibit A" describe Cross Island Plaza and the Offsite

Parking Lot by metes and bounds.

On August 10, 2006, the Debtors signed a Bargain and Sale Deed (the "Deed"),

purporting to convey property from CIP to Block.  The Deed does not describe the property

being transferred. Guggenheim Aff. 3 ¶ 11, ECF No. 12-01208 Doc. 21-4 ("The property

description section of the Deed was left blank.").  Rather, it states: "ALL that certain plot, piece

or parcel of land, with the buildings and improvements thereon erected, situate, lying and being

in the," followed by a blank area.  A vertical list in the margin to the left of the blank area reads:

"Tax Map Designation," "Dist.," "Sec.," "Blk.," "Lot(s)." Deed, ECF No. 12-01208 Doc. 1-1.

The Deed was recorded, with several other documents, in the index for the Offsite

Parking Lot—it was not recorded in the index for Cross Island Plaza. US Bank Undisputed Facts

4 ¶ 14, ECF No. 12-01208 Doc. 21-2; DLJ Undisputed Facts 4 ¶ 14, ECF No. 12-01208 Doc. 26.

The documents recorded with the Deed are:

(1) A two-page "Recording and Endorsement Cover Page" (the document only references
the Offsite Parking Lot). Recording and Endorsement Cover 43–44, ECF No. 12-01208
Doc. 21-5.

(2) A "Deed Acknowledgement" form (the form only references the Offsite Parking Lot).
Deed Acknowledgment 47, ECF No. 12-01208 Doc. 21-5.

(3) "Schedule A" and "Schedule A2" (two pages, apparently produced by Chicago Title
Insurance Company, as its name appears at the top of both sheets, providing metes and
bounds descriptions for Cross Island Plaza and the Offsite Parking Lot, respectively—

identical schedules are attached to the Ground Lease). Deed 46, 48, ECF No. 12-01208 Doc. 21-5.

(4) A "Supporting Document Cover Page" (the page references a "Real Property Transfer Report" [described as two pages] and a "Smoke Detector Affidavit" [described as five pages]). Supporting Document Cover 49, ECF No. 12-01208 Doc. 21-5.

(5) "Real Property Transfer Report[s]" (contrary to notations on the Supporting Document Cover Page, there are two similar, yet distinguishable, two-page documents titled "Real Property Transfer Report"—they only identify the Offsite Parking Lot). Property Transfer Report 50–53, ECF No. 12-01208 Doc. 21-5.

(6) "Affidavits of Compliance with Smoke Detector Requirement" forms (again, contrary to the Supporting Document Cover Page, there are ten single page "Affidavits of Compliance with Smoke Detector Requirement"—one signed and one unsigned copy for each of the five Offsite Parking Lot lots). Smoke Detector Affidavits 54–63, ECF No. 12-01208 Doc. 21-5.

Around the same time, CIP also executed a Consolidated Promissory Note (the "Note") in favor of Arbor to refinance $17,342,790.03 of debt from the Original Mortgage and obtain $9,657,209.97 of new financing. Guggenheim Aff. 5 ¶ 20, ECF No. 12-01208 Doc. 21-4. To secure the Note, CIP executed a $27,000,000 "Mortgage and Security Agreement, and Consolidation, Modification and Restatement Agreement" (the "Consolidated Mortgage") against its interest in Cross Island Plaza and the Offsite Parking Lot. Guggenheim Aff. 5 ¶ 21, ECF No. 12-01208 Doc. 21-4. The Consolidated Mortgage describes the encumbered property at least six times:

(1) The third paragraph of Part A describes the encumbered property as:

> [A]ll of Borrower's estate, right, title and interest in, to and under any and all of the following described property, whether now owned or hereafter acquired (collectively, the "Property"):
>
> All that certain real property situated in the County of Queens, State of

> New York together with all that certain leasehold estate covering real property situated in the County of Queens, State of New York, each more particularly described on Exhibit A attached hereto and incorporated herein by this reference (the "Real Estate") . . . .

Consolidated Mortgage 2, ECF No. 12-01208 Doc. 1-3.

(2) Exhibit A provides both a metes and bounds description of the Properties and identifies "Tract I" (Cross Island Plaza) as "Fee" and "Tract II" (the Offsite Parking Lot) as "Leasehold."

(3) Article 1, § 1.1(k) states CIP "has good and marketable fee simple title to the Property." Consolidated Mortgage 7, ECF No. 12-01208 Doc. 1-3.

(4) Article I, § 1.1(ss) states that CIP's interest in the mortgaged property derives from a lease:

> That certain Lease dated on or about August 10, 2006 between Block 12892 Realty Corp (the "Landlord") and Borrower, as tenant, all as more particularly described on Exhibit D attached hereto and made a part hereof (collectively, the "Ground Lease"), pursuant to which Borrower obtained its interest in and to the Property.

Consolidated Mortgage 13, ECF No. 12-01208 Doc. 1-3.

(5) Article I, § 1.38(f) explicitly prevents the merger of the fee simple and leasehold estates:

> So long as this Deed of Trust is in effect, and during the term of the Ground Lease, except as may be provided for in the Ground Lease, there shall be no merger of the Ground Lease or any interest therein, nor of the leasehold estate created thereby with the fee estate in the Land or any portion thereof by reason of the fact that the Ground Lease or such interest therein or such leasehold estate may be held directly or indirectly by or for the account of any person who shall hold the fee estate in the Land or any portion thereof, except as may be provided in the Ground Lease.

Consolidated Mortgage 60, ECF No. 12-01208 Doc. 1-11. The passage goes on to grant the lender a lien against the fee interest of the property if CIP, as borrower, ever possesses such an interest:

> In the event that Borrower or any related person or entity or affiliate thereof acquires or becomes the holder of the fee title or any other estate title or interest in the Land or any part of the Property (including, without

limitation, any development, air or floor area ratio rights now or hereafter existing with respect to all or any part of the Property), this Deed of Trust shall attach to and cover and be a lien on such other estate, title or interest and such other estate, title or interest shall without further assignment mortgage or conveyance, become and be subject to the lien of and covered by this Deed of Trust . . . .

Consolidated Mortgage 60, ECF No. 12-01208 Doc. 1-11.

(6) The Ground Lease, an exhibit to the Mortgage, provides additional descriptions, as discussed above.

In March of 2009, after a series of assignments, US Bank took possession of the Note and the Consolidated Mortgage. Guggenheim Aff. 6 ¶ 28, ECF No. 12-01208 Doc. 21-4.[3]

On June 3, 2008, Thomas Kontogiannis (Georgia Kontogiannis' husband), Ted Doumazios (Arbor's lawyer during the Sale/Leaseback), and numerous other defendants were charged with defrauding DLJ and Washington Mutual[4] before District Judge Kiyo A. Matsumoto. *United States v. Kontogiannis et al.*, Index No. 09-CR-360, ECF No. 1.

While the criminal proceedings were underway, DLJ filed civil claims in the New York State Supreme Court (Index No. 104675-10) (the "DLJ State Action"), and on November 15, 2011, the Third Amended Complaint joined the Debtors to the DLJ State Action.[5]  On November 16, 2011, a third order of attachment attached all of the Debtors' property. DLJ Proof of Claim, Ex. B, ECF No. 12-01208 Doc. 1-7.  On April 4, 2012, the Debtors, by Georgia Kontogiannis,

---

[3] US Bank, as an assignee of Arbor, is subject to the same defenses as the assignor, Arbor. *See Cavendish Traders, Ltd. v. Nice Skate Shoes, Ltd.*, 117 F. Supp. 2d 394, 399 (S.D.N.Y. 2000).

[4] After Washington Mutual collapsed, Federal Deposit Insurance Corporation (the "FDIC"), as receiver, supplanted it in the proceedings.

[5] US Bank references the Third Amended Complaint as being Exhibit A to its Amended Answer and Counterclaim. While not annexed to the Amended Answer and Counterclaim, the Third Amended Complaint can be found on the docket of the main bankruptcy case, No. 12-42491, as Doc. 125-8.

executed a stipulation of settlement in state court whereby the Debtors "agree[d] to the immediate entry . . . of a judgment . . . by the Clerk of the Court against each of them, jointly and severally, on all causes of action, in the amount of $48,267,204 (the 'Judgment'), together with interests and costs." DLJ Proof of Claim, Ex. A 2 ¶ 2, ECF No. 12-01208 Doc. 1-7.  Hours later, CIP and Block filed voluntary petitions under Chapter 11 of the Bankruptcy Code and moved for joint administration of the cases.

As part of sentencing in the criminal case, the district court had previously entered a Preliminary Order of Forfeiture against Thomas Kontogiannis' interest in, among other properties, Cross Island Plaza, and an Order and Judgment of Restitution in favor of the FDIC and DLJ.[6]  Orders, 09-CR-360, ECF No. 217-1, 2.  Subsequently, CIP and Wells Fargo Bank, N.A., who preceded US Bank as trustee of Commercial Mortgage Pass-through Certificates Series 2006-C28, filed third-party petitions in district court to assert an interest in Cross Island Plaza.  Based on all of the proceedings, including the state court stipulation and the bankruptcy filings, CIP, Wells Fargo, DLJ, the FDIC, and the U.S. Attorney entered into a stipulation in district court (the "Victim Stipulation"), which provided, *inter alia*, that conflicting claims to Cross Island Plaza would be resolved in the bankruptcy court. Stipulation and Order, Orders, 09-CR-360, ECF No. 293.

DLJ filed a proof of secured claim in both bankruptcy cases. Claim No. 7, ECF 12-01208; Claim No. 2, ECF 12-42493.  The proofs of claim assert that as of the petition date, the Debtors were jointly and severally indebted to DLJ "in the stipulated principal amount of $48,267,204.83" plus "an unliquidated amount, including without limitation, interest." DLJ

---

[6] According to CIP and Block, Thomas Kontogiannis held no interest in either debtor.

Proof of Claim 2–3 ¶ 3, ECF 12-01208 Doc. 1-7.  As the basis of its claim, DLJ stated the indebtedness arose from claims asserted by DLJ against the Debtors in the DLJ State Action and the stipulation in settlement thereof. DLJ Proof of Claim 3 ¶ 4, ECF No. 12-01208 Doc. 1-7. Furthermore, DLJ classified the indebtedness as secured by "substantially all of the Debtors' real and personal property" pursuant to the state court's third order of attachment, filed with the New York County Clerk and served on the Queens County Clerk. DLJ Proof of Claim 3 ¶ 4, ECF No. 12-01208 Doc. 1-7.  The "Stipulated Settlement" and "Order of Attachment" are annexed to the proofs of claim as supporting documentation.

Upon the Debtors' request, this Court issued an order authorizing liquidation of the Debtors' property.  The Debtors' behavior during the Chapter 11 case, including their refusal to close on the Court approved sale of the Properties, caused the Office of the United States Trustee to move to convert both cases to Chapter 7.  After several hearings, this Court converted the cases to Chapter 7, and the Trustee closed on the sale of the Properties.

### III.    **LEGAL STANDARD**

#### A.  Motion to Dismiss

Under Rule 12 of the Federal Rules of Civil Procedure (the "Rules"), made applicable by Bankruptcy Rule 7012, a complaint is dismissed "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008).  A motion to dismiss succeeds when a complaint fails to provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).  A claim is facially plausible if reasonable inferences, based on the facts alleged, would permit the court to impose liability upon the defendant. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Factual allegations in a complaint are accepted as true, and all reasonable inferences are drawn in

favor of the non-movant. *Roth v. Jennings*, 489 F.3d 499, 501 (2d Cir. 2007).

"[A]lthough 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679). Thus, legal conclusions disguised as facts are not accepted as true. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). To survive a motion to dismiss, a complaint must provide more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," *Twombly*, 550 U.S. at 555, and labels, *see Iqbal*, 556 U.S. at 679; *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998). If a complaint fails to "nudge [a] claim across the line from conceivable to plausible," it must, on proper motion, be dismissed. *Twombly*, 550 U.S. at 547.

In ruling on a motion to dismiss, the court may consider the complaint, documents attached to the complaint, facts subject to judicial notice, and certain documents omitted from the complaint but attached to the motion. Fed. R. Civ. P. 10(c); *see, e.g., Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d. Cir. 1991) (holding a court may consider both exhibits attached to the complaint and exhibits omitted from the plaintiffs' complaint, but attached to defendants' motion papers, when the plaintiffs undisputedly were on notice of the exhibits' content, and the exhibits were integral to plaintiffs' claim). Other documents, such as affidavits, are generally beyond the scope of a motion to dismiss. *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 154–55 (2d Cir. 2006).

### B. Motion for Summary Judgment

A motion for summary judgment, governed by Rule 56, made applicable by Bankruptcy Rule 7056, also disposes of a case before trial; however, it allows parties to advance their arguments with limited evidentiary support. In ruling on a motion for summary judgment, the

Court looks to "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any." *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). A motion for summary judgment should only be granted when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Factual inferences are drawn in the nonmoving party's favor. *Ford v. McGinnis*, 352 F.3d 582, 587 (2d Cir. 2003). Summary judgment is warranted when no genuine issue of material fact exists, and "based on the undisputed facts, the moving party is entitled to judgment as a matter of law." *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998).

The initial burden rests on the moving party to demonstrate the absence of a genuine issue of material fact; once established, the burden shifts to the nonmoving party to supply admissible evidence of a genuine, material issue for trial. *Celotex*, 477 U.S. at 323, 324; *Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir. 2003); *Jeffreys v. Rossi*, 275 F. Supp. 2d 463, 474 (S.D.N.Y. 2003) (citing *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 289–90 (1968)). A genuine issue requires more than a "metaphysical doubt as to the material fact." *Niagara*, 315 F.3d at 175. Conclusory allegations, conjecture, unfounded opinions, or evidence and facts that are merely colorable, irrelevant, or unnecessary are insufficient. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Matsushita*, 475 U.S. at 586; *Niagara*, 315 F.3d at 175.

IV.    **PROCEDURAL HISTORY**

While the cases were in Chapter 11, DLJ initiated the first adversary proceeding against US Bank and the Debtors to determine the extent and priority of US Bank's claims against CIP. DLJ seeks declaratory relief vesting fee simple ownership of the Properties in Block. US Bank

filed an Amended Answer and Counterclaim.  Count I of the counterclaim requests declaratory relief or deed reformation vesting ownership of Cross Island Plaza in CIP.  Counts II and III object to DLJ's proofs of claim and secured creditor status.  DLJ responded with an answer and a motion to dismiss US Bank's counterclaims.  US Bank then filed a cross motion for summary judgment determining that it has an allowed claim secured by CIP's fee interest in Cross Island Plaza and leasehold interest in the Offsite Parking Lot.  In the alternative, US Bank moved for partial summary judgment, asking this Court to declare its priority based on its status as a successor in interest to the Original Mortgage.[7]

After the cases were converted to Chapter 7, US Bank and the Trustee entered into a stipulation, consented to by DLJ, which *inter alia*, established a deadline for the Trustee to file an adversary proceeding challenging the validity, enforceability, perfection and/or priority of claims asserted by US Bank, DLJ, or both. So-Ordered Stipulation 7 ¶ 5, ECF No. 12-42491 Doc. 313; *see also* Amended Seventh Interim Order, 15–17, ¶¶ 9, 11 ECF No. 12-42491 Doc. 182.  Accordingly, the Trustee initiated a separate adversary proceeding against US Bank requesting substantially the same relief as DLJ.  US Bank answered and moved for summary judgment, and the Trustee responded by adopting the papers filed by DLJ in the first adversary proceeding in support of its motion to dismiss US Bank's amended counterclaims and in opposition to summary judgment and partial summary judgment.

---

[7] The arguments in DLJ's motion to dismiss and US Bank's motion for summary judgment are reviewed in a light most favorable to the nonmoving party or parties and subjected to every reasonable contrary inference.  Because the motions request diametrically opposing relief, the Court also reviews each argument in the most favorable light with every reasonable inference in favor of the party advancing such argument.

## V.    **ARGUMENTS**

The Plaintiffs argue that CIP executed the Sale/Leaseback with Block for Cross Island Plaza and the Offsite Parking Lot, and CIP executed the Note, secured by leasehold interests in the Properties.  US Bank argues that CIP executed the Sale/Leaseback with Block for the Offsite Parking Lot, while CIP kept a fee simple interest in Cross Island Plaza, and CIP executed the Note secured by a split leasehold and fee simple interest in the Properties.  To advance their arguments, the Parties highlight document sections supporting their respective positions, but ignore contradictory evidence within those same documents.  Additionally, because discrepancies arise between "metes and bounds" and "block and lot" property descriptions, the Parties argue that, as a matter of law, "metes and bounds" prevail over conflicting "block and lot" descriptions, or vice versa.  The competing analyses make case law appear inconsistent—it is not.  Courts interpret, and if necessary reform, valid deeds to reflect the intent of the executing parties.

The proceedings revolve around a core issue—which debtor owns the fee simple interest in Cross Island Plaza.  US Bank argues that CIP and Block only recorded the Deed against the Offsite Parking Lot, because they only intended to transfer that parcel.  US Bank reinforces its position by citing to the lack of smoke detector affidavits for Cross Island Plaza in the record and the absence of Cross Island Plaza from the Real Property Transfer Reports.  DLJ counters that the other documents, such as the Smoke Detector Affidavits, referenced by, but not included with, the documents recorded with the Deed, were unrelated to the conveyance of Cross Island Plaza; and, accordingly, their omission is not dispositive of the exclusion of Cross Island Plaza from the transfer.

DLJ argues that the consecutive numbering of Schedules A and A2 demonstrates their

deliberate inclusion.  US Bank, however, posits that the inclusion of Schedule A was a scrivener's error.  While the schedules are consecutively numbered, with Cross Island Plaza first, the paucity of the record allows a reasonable inference: Chicago Title Insurance Company created the reports for an unrelated purpose, the schedules were recycled during the 2006 Sale/Leaseback, and the scrivener simply grabbed one page too many.  Reinforcing US Bank's theory, the scrivener was less than meticulous, as the number of pages listed on the Supporting Documents Cover Page for the Smoke Detector Affidavits and the Real Property Transfer Report includes only half of the pages recorded.

Turning to the Consolidated Mortgage, US Bank argues that the parties intended to create different interests, because Exhibit A designates "Tract I" (Cross Island Plaza) as "fee" and Tract II (the Offsite Parking Lot) as "leasehold." Consolidated Mortgage 55, ECF No. 12-01208 Doc. 1-1.  Notwithstanding Exhibit A, the Plaintiffs contend that Arbor knew CIP's interest in Cross Island Plaza was limited to a Ground Lease; and thus, the Consolidated Mortgage could only encumber the Ground Lease.  First, they argue that by using the singular possessive pronoun "its," § 1.1(ss) implies that any interest CIP had in the Properties resulted from: "[t]hat certain Lease . . . **pursuant to which Borrower obtained its interest** in and to the Property." Consolidated Mortgage 3, ECF No. 12-01208 Doc. 1-3 (emphasis added).  Second, § 1.38(f) distinguishes between fee and leasehold estates, which DLJ argues would be superfluous if CIP already had a fee interest and implies that CIP held a leasehold interest in the Properties.

With respect to the Ground Lease, US Bank argues that the Court should focus on the cover page, which only includes block and lot numbers for the Offsite Parking Lot.  US Bank buttresses its position with an excerpt from the body, which defines the "Demised Premises" as the lots that comprise the Offsite Parking Lot. Ground Lease 3, ECF No. 12-01208 Doc. 1-2.

The Plaintiffs take a contrary stance based upon § 1 of the Ground Lease, which describes the affected property as "all of the land (the 'Land') described in Exhibit A hereto." As previously stated, in lieu of "Exhibit A," the Ground Lease includes Schedules A and A2, which, collectively, identify Cross Island Plaza and the Offsite Parking Lot.  The Plaintiffs argue that the inclusion of Schedule A must have been intentional, because a mistaken annexation would happen only once.  US Bank rebuts that the inclusion of Schedule A in the Ground Lease was a continuation of the scrivener's error found in documents recorded with the Deed.

US Bank requests that the Deed be reformed to remove Schedule A, which has a metes and bounds description of Cross Island Plaza, to accord with its view that the Debtors only intended to transfer ownership of the Offsite Parking Lot.  The Plaintiffs counter, *inter alia*, that 11 U.S.C. § 544(a)(3) precludes reformation.[8]  Finally, the Parties raise various equitable defenses, including waiver, estoppel, and laches.  The Parties surmise that the Deed incorporates documents, including Schedule A, and is a valid instrument of conveyance capable of reformation.  As explained below, the Court rejects these assumptions.  To the extent the Parties' equitable arguments pertain to their positions on the manner in which this Court should enforce, interpret, or reform the Deed, the Court does not address them, as it rules that the Deed was not a valid instrument of conveyance.

VI.    **DISCUSSION**

### A.  The Deed

As explained in detail below, the Deed lacks a property description, and it is thus a

---

[8] Section 544(a) endows a trustee with the power of a bona fide purchaser of the debtor's property "to cut off unperfected security interests, secret liens and undisclosed prepetition claims . . . as of the commencement of the case." *In re Canney*, 284 F.3d 362, 374 (2d Cir. 2002).  The Court does not reach this issue because, as stated herein, the Deed is a nullity and cannot be reformed.

nullity.  The Court cannot salvage the void Deed by looking to external documents or interpreting the parties' intent.  Furthermore, the Court cannot reform a nullity.

### i.    Interpretation

State law determines a debtor's interest in property. *Butner v. United States*, 440 U.S. 48, 55 (1979).  In New York, "[a]n estate or interest in real property . . . cannot be created, granted, assigned, surrendered or declared, unless . . . by a deed or conveyance in writing, subscribed by the [grantor] . . . ." N.Y. Gen. Oblig. Law § 5-703(1) (McKinney 2006); *see In re Emergency Beacon Corp.*, 1977 Bankr. LEXIS 10, at *12–*13 (Bankr. S.D.N.Y. 1977); *see also James v. Patten*, 6 N.Y. 9, 11–17 (1851) (emphasizing the importance of the legislature's use of the word "subscribed" instead of "signed").  A deed must include "a specific grantor, a specific grantee, a proper designation of the property, a recital of the consideration, and . . . technical operative words." *Cohen v. Cohen*, 176 N.Y.S. 893, 894 (App. Div. 2d Dep't 1919); *see also Romanoff v. Village of Scarsdale*, 856 N.Y.S.2d 170, 170–72 (App. Div. 2d Dep't 2008).  If a deed fails to describe property with a reasonable degree of certainty, or fails to include any property description, it is a nullity and not an instrument of conveyance. *Rekis v. Lake Minnewaska Mountain Houses, Inc.*, 573 N.Y.S.2d 331, 333–34 (App. Div. 3d Dep't 1991) ("A deed which contains a blank space instead of a description when signed is not an instrument of conveyance, and if the necessary words are inserted thereafter, the completed instrument is not one which was executed by the signer.") (citing *Hulburt v. Walker*, 258 N.Y. 8, 13–14 (1931)); 43 N.Y. Jur. 2d Deeds § 39; 23 Am. Jur. 2d Deeds § 39.

To satisfy the formal requirements with sufficient specificity, a deed may incorporate external documents by reference; however, it must clearly indicate the parties' desire to do so. *Chiacchia v. Nat'l Westminster Bank*, 507 N.Y.S.2d 888, 889–90 (App. Div. 2d Dep't 1986). The incorporation fails if the reference is insufficient to identify the external documents beyond a

reasonable doubt. *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1201 (2d Cir. 1996); *Chiacchia*, 507 N.Y.S.2d at 889–90; *In re Bd. of Comm' rs. of Washington Park of City of Albany*, 52 N.Y. 131, 134 (1873).

Provided a valid conveyance, instruments creating or transferring an "interest in real property must be construed according to the intent of the parties, so far as such intent can be gathered from the whole instrument, and is consistent with the rules of law." N.Y. Real Prop. Law § 240(3) (McKinney 2006). For instance, courts avoid a dogmatic approach when resolving a conflict between metes and bounds descriptions and block and lot designations. Instead, they implement a general strategy to settle boundary disputes in accordance with the parties' intent: specific descriptions prevail over general descriptions;[9] if the earth conflicts with a writing, then maps may provide evidence of an overall plan or scheme that indicate intent in a manner words cannot;[10] and persistent ambiguities are construed against grantors.[11] Thus, in interpreting a deed, neither blocks and lots nor metes and bounds control as a matter of law—the parties' intent

————————————————

[9] *United States v. 63.04 Acres of Land*, 245 F.2d 140, 145 (2d Cir. 1957) (holding specific metes and bounds prevail over general language in setting property line in relying on "the bulkhead line" instead of "North by Reynolds Channel"); *Petty v. Fid. Union Tr. Co.*, 263 N.Y.S. 1, 5 (App. Div. 2d Dep't 1933) ("[A] particular description in a deed or other instrument will prevail over one general in its character . . . ."); *John Clarke Estate v. City of New York*, 151 N.Y.S. 714, 716–17 (App. Div. 2d Dep't 1915) (holding the general description of land by acreage yields to specific metes and bounds); *Johnston v. Long Island Inv. and Improvement Co.*, 82 N.Y.S. 961 (App. Div. 2d Dep't 1903) (holding specific metes and bounds prevail over familiar descriptions); *Potter v. Boyce*, 77 N.Y.S. 24 (App. Div. 1st Dep't 1902) (conflicting descriptions settled by referencing a map); *Mazzucco v. Eastman*, 236 N.Y.S.2d 986, 988 (Sup. Ct. 1960) (holding "plus or minus" metes and bounds were less precise than "block and lot" descriptions); *Growen Realty Corp. v. Levy*, 256 N.Y.S. 729, 731 (Mun. Ct. 1932) (holding specific metes and bounds prevail over a street address).

[10] *Zerafa v. Montefiore Hosp. Hous. Co.*, 403 F. Supp. 2d 320, 326–27 (S.D.N.Y. 2005) (finding that no map was needed in light of a precise metes and bounds description); *Brainin v. New York, N. H. & H. R. Co.*, 120 N.Y.S. 1093, 1093–95 (App. Div. 2d Dep't 1910) (holding that it is appropriate to rely on a map when the deed provides both metes and bounds and references the map, and the map specifically addressed an ambiguity in the metes and bounds); *Wessel v. Cramer*, 67 N.Y.S. 425, 426–27 (App. Div. 1st Dep't 1900) (relying on map referenced by the deed when specific metes and bounds are impossible).

[11] *See Petty v. Fid. Union Tr. Co.*, 263 N.Y.S. 1, 5 (App. Div. 2d Dep't 1933).

controls.

To decipher intent, "[t]here is no different rule applicable to the construction of a covenant or clause in a deed than governs in the construction of any other instrument." *Matteson v. Johnston*, 124 N.Y.S. 185, 188 (App. Div. 4th Dep't 1910).  Accordingly, traditional cannons of construction and interpretation apply in a situation where a valid conveyance is susceptible to more than one interpretation. *See Int'l Salt Co. v. Geostow*, 878 F.2d 570, 573 (2d Cir. 1989); *Loch Sheldrake Assocs. v. Evans*, 306 N.Y. 297, 304–05 (1954).  A deliberately prepared and executed instrument is presumed to reflect the intention of the parties. *See George Backer Mgmt. Corp. v. Acme Quilting Co.*, 46 N.Y.2d 211, 219 (1978).  Provisions should not be rendered superfluous or meaningless, *In re Vanderveer Estates Holdings, Inc.*, 283 B.R. 122, 130–31 (Bankr. E.D.N.Y. 2002), and if reasonable, a court must reconcile and give meaning to facially conflicting provisions, *Seabury Constr. Corp. v. Jeffrey Chain Corp.*, 289 F.3d 63, 69 (2d Cir. 2002).

Here, both the Plaintiffs and US Bank posit that the Deed incorporates the documents that were attached to or recorded with it. *See, e.g.*, US Bank Undisputed Facts 3–4 ¶¶ 10–14, ECF No. 12-01208 Doc. 21-2; DLJ Undisputed Facts 3–4 ¶¶ 10–14, ECF No. 12-01208 Doc. 26. However, without any reference on the face of the Deed and no indication of intent aside from the act of filing, the Parties fail to establish that the Deed incorporates the additional documents, let alone to the requisite standard. *See George Backer Mgmt. Corp.*, 46 N.Y.2d at 219–20 (requiring clear and convincing evidence of intentionality); *Chiacchia*, 507 N.Y.S.2d at 889–90 ("[T]he paper to be incorporated into a written instrument by reference, must be so referred to and described in the instrument that the paper may be identified beyond all reasonable doubt."); *see also Maurice v. Maurice,* 39 Misc. 3d 1205(A), *5 (N.Y. Sup. Ct. Mar. 18, 2013) ("A written

instrument may incorporate external documents by reference, but incorporation succeeds only if the reference is sufficient to identify the external documents beyond a reasonable doubt."). Therefore, the Court cannot look to external documents to supply the Deed with a property description.

If the Deed identified the property, but in an ambiguous manner susceptible to multiple interpretations, then the Court could consider evidence of the parties' intent, such as the documents filed with the Deed, the Ground Lease, and the Consolidated Mortgage. Here, however, the Court cannot reach the parties' intent regarding the Deed, a question of fact, because the Deed, which lacks a property description, is a nullity as a matter of law.[12]

### ii.      Reformation

Reformation, an equitable remedy, allows courts to align erroneous legal instruments with the executing parties' intent by transposing, rejecting, or supplying terms to correct or clarify the document. *Al's Atl., Inc. v. Shatma, LLC*, 971 N.Y.S.2d 9, 10–11 (App. Div. 2d Dep't 2013). Mistakes in the description, quantity, or condition of land may provide grounds for deed reformation. *Hadley v. Clabeau*, 532 N.Y.S.2d 221, 225 (Sup. Ct. 1988) ("It is a well accepted principle of law that an instrument may be reformed for a mutual mistake of fact. The general principle of law has been held to be particularly applicable to the reformation of a deed.") (citation omitted).

Reformation cannot, however, "give life to a nullity." *In re Suffolk Cnty. Tr. Co.*, 65 N.Y.S.2d 243, 252 (Sup. Ct. 1946); *Rosen v. M. Philipsborn Co.*, 120 N.Y.S. 486, 487 (App.

---

[12] Although this Court rules that the Deed did not transfer any interest in the Properties, this decision does not constitute a determination of the Debtors' and the Parties' interests in the Properties, except to the extent set forth in Section VII, *infra*.

Div. 1st Dep't 1909) (void agreement cannot be reformed).  For example, in *Maurice v. Maurice*, the defendant executed a two-page deed purporting to transfer property to herself and the plaintiff, her son. *Maurice*, 39 Misc. 3d 1205(A), *2. The pair left a blank space where a property description belonged—a notation below the signature on the second page identified a parcel by block and lot. *Id.*  The law firm responsible for preparing the documents maintained a copy that included a page attached to the deed with a metes and bounds description of the parcel. *Id.*  The court held the attachment was immaterial because the deed bore "no description [and] no reference to an extrinsic description." *Id.*; *see also PaineWebber*, 81 F.3d at 1201; *Chiacchia*, 507 N.Y.S.2d at 889–90; *Matter of Bd. of Comm'rs.*, 52 N.Y. at 134.  The court explained that the Statute of Frauds required a subscription, which rendered any property descriptions below the signature, or on an attached page, ineffective. *Maurice*, 39 Misc. 3d 1205(A), *5.  As a result, that court held that the deed was void, and thus beyond reformation. *Id.*

As previously stated, the Deed does not incorporate the recorded documents by reference. The Deed lacks any property description whatsoever.  It is thus a nullity and cannot be reformed.

### B.  The Ground Lease and the Consolidated Mortgage

The Parties draw support for their respective positions from the Ground Lease and the Consolidated Mortgage.  The Plaintiffs cite to these documents as evidence that the Deed transferred a fee simple interest in both Properties to Block.  US Bank references these same documents as evidence that the Deed transferred a fee simple interest in the Offsite Parking Lot to Block, while CIP retained the fee simple interest in Cross Island Plaza.  However, as stated above, the Deed is void.  The Ground Lease and the Consolidated Mortgage are immaterial as evidence of the parties' intent in executing the Deed.

To be clear, this Decision does not rule on the Ground Lease and the Consolidated Mortgage in any other respect.  The Court has not yet determined the validity, priority, and

21

extent of the Consolidated Mortgage. Moreover, this Decision does not interpret or enforce the Ground Lease, and it is without prejudice to the Parties' further arguments regarding the Ground Lease's import. The Parties will have an opportunity to be heard on these and other questions arising from or unresolved by this Decision.

## VII.    US BANK'S PRIORITY AS A SUCCESSOR IN INTEREST

US Bank argues that $17,342,790 of its mortgage interest relates back to the Original Mortgage and that it is entitled to partial summary judgment on that portion of the lien. The Plaintiffs do not dispute that the Consolidated Mortgage replaced the Original Mortgage; instead, they argue the text of the Consolidated Mortgage defeats US Bank's position.

Part B of the Consolidated Mortgage describes the extent and priority of the lien against the Properties:

> Borrower and Lender desire (a) to combine and consolidate Consolidated Mortgage set forth on Part A hereof (the "New Mortgage") and the Existing Mortgage(s), **so as to create solely one lien covering the Property** and (b) to restate the terms and conditions of the Existing Mortgage(s) in their entirety in the manner set forth below:

Consolidated Mortgage 78, ECF No. 12-01208 Doc. 1-11 (emphasis added). Furthermore, paragraph 1 of Part B provides:

> The New Mortgage is hereby combined and consolidated with the Existing Mortgage(s) so that **together they shall constitute a single lien** and interest on the Property in the amount of the Note, with the same intent and like effect **as if one first mortgage covering the Property had been executed and delivered by Borrower to Lender** to secure the Existing Indebtedness and the New Indebtedness and the payment and performance of all other monetary and non-monetary obligations with respect thereto as set forth in Paragraph 2 below (the "Consolidated Mortgage").

Consolidated Mortgage 78–79, ECF No. 12-01208 Doc. 1-11 (emphasis added).

In New York, a consolidated mortgage creates and constitutes a single lien. *See* N.Y. Real Prop. Law § 321(3) (McKinney 2006). However, "[t]he rights of a mortgagee are generally

fixed at the time the mortgage is executed, and can be neither enlarged or impaired by subsequent acts of the mortgagor." *FDIC v. Five Star Mgmt.*, 692 N.Y.S.2d 69, 74 (App. Div. 1st Dep't 1999). Correspondingly, a consolidation agreement cannot "impair liens in favor of parties that are not the contracting parties." *Benson v. Deutsche Bank Nat. Tr., Inc.*, 970 N.Y.S.2d 794, 797 (App. Div. 2d Dep't 2013) (quoting *Five Star Mgmt.*, 692 N.Y.S.2d at 72). Thus, it does not alter the priority of liens held by parties outside the agreement. *See Societe Generale v. Charles & Co.*, 597 N.Y.S.2d 1004, 1007 (Sup. Ct. 1993); s*ee generally Dime Sav. Bank of New York, F.S.B. v. Levy*, 615 N.Y.S.2d 218 (Sup. Ct. 1994). Instead, individual liens persist against third parties, maintaining their independent priorities. *See* N.Y. Real Prop. Law, § 321(3); *Dominion Fin. Corp. v. 275 Washington St. Corp.*, 316 N.Y.S.2d 803, 806 (1970).

Arbor and CIP executed a consolidation agreement. Thus, as transferor of the Consolidated Mortgage, US Bank is also a successor in interest to the Original Mortgage. The Consolidated Mortgage did not change the validity, priority, or extent of that portion of US Bank's claim that derives from the Original Mortgage. Moreover, the Consolidated Mortgage neither expanded nor contracted the prior liens against entities outside the agreement. DLJ was uninvolved in the Consolidated Mortgage; thus, DLJ's priority does not advance by it. As a result, a single lien exists between US Bank and CIP; however, against DLJ as a third party, US Bank has two liens against CIP's interest in the collateral with, potentially, two different priorities.

Section 506 governs a creditor's secured status in bankruptcy. "An allowed claim . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditors interest . . . is less than the amount of such allowed claim." 11 U.S.C. § 506(a)(1). Accordingly, the Court

concludes that US Bank is entitled to partial summary judgment as a secured creditor up to the lesser of $17,342,790.03 or the value of the collateral securing the Original Mortgage. The validity, priority, and extent of US Bank's claim above that amount remains in dispute.

The nature and value of the collateral securing the Original Mortgage likewise remains in dispute. In 1997, only the Structure secured the Original Mortgage. However, by 2006, CIP had acquired the Onsite Parking Lot. This Decision does not rule on whether the Onsite Parking Lot, or any other property, secured the Original Mortgage as after-acquired property. Furthermore, this Decision does not opine as to the value of the Structure or the Onsite Parking Lot individually, or Cross Island Plaza as a whole, or the allocation of value between any and all of the Properties. Further proceedings are needed to determine those issues.

VIII.    **COUNTERCLAIMS II AND III**

In Count II of the counterclaim, US Bank seeks disallowance and expungement of DLJ's proofs of claim, pursuant to 11 U.S.C. § 502(b)(1), because "DLJ is not a creditor of the Debtors' estates." Am. Answer and Countercl. 21 ¶ 45, ECF No. 12-01208 Doc. 14.

A properly filed proof of claim "constitute[s] prima facie evidence of the validity and amount of the claim." Fed. R. Bank. P. 3001(f). "[A] claim that alleges facts sufficient to support a legal liability to the claimant satisfies the claimant's initial obligation to go forward." *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173 (3rd Cir. 1992). The proof of claim "is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). "[T]he burden then shifts to the objecting party to present evidence to overcome the prima facie case." *United States v. Offord Fin. Inc. (In re Medina)*, 205 B.R. 216, 222 (B.A.P. 9th Cir. 1996). The objector must "produce evidence and show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves." *Wright v. Holm (In re Holm)*, 931 F.2d 620,

623 (9th Cir. 1991) (quoting 3 Collier on Bankruptcy §502.02, at 502–22 (15th ed. 1991)).

Accordingly, "an objection does not deprive the proof of claim of presumptive validity unless the

objection is supported by *substantial evidence*." *Hemingway Transp., Inc. v. Kahn (In re*

*Hemingway Transp., Inc.)*, 993 F.2d 915, 925 (1st Cir. 1993) (emphasis in original).  If the

objecting party meets "the initial burden of producing sufficient evidence to rebut the claimant's

*prima facie* case . . . [then] the burden shifts back to the claimant . . . and the claimant must

prove his claim by a preponderance of the evidence." *In re Forte*, 234 B.R. 607, 617 (Bankr.

E.D.N.Y. 1999) (citation omitted).

     Here, US Bank avers that DLJ cannot assert creditor status on account of the Third

Amended Complaint, because "[t]he Third Amended Complaint [ ] fails to allege any facts

(much less prove) that the Debtors were co-conspirators in the Mortgage Fraud." Am. Answer

and Countercl. 21 ¶ 45, ECF No. 12-01208 Doc. 14.  However, this statement is a legal

conclusion, which the court does not accept as true for the purposes of a motion under Rule

12(b)(6). *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).  But, even if US Bank is correct

that the Third Amended Complaint pleaded fraud insufficiently, this would not substantially

preclude DLJ's prima facie creditor status, because DLJ bases its proofs of claim on, *inter alia*,

the judgment stipulated to by the Debtors in the DLJ State Action.[13]  Because US Bank does not

allege sufficient facts to rebut DLJ's presumptively valid proofs of claim, Count II is dismissed

for failure to state a claim.

     In Count III of the Counterclaim, US Bank seeks declaratory judgment, pursuant to 11

---

[13] DLJ also argues that it has a claim against the Debtors stemming from orders entered in the criminal proceedings and memorialized in the Victim Stipulation, to which Wells Fargo was a signator. DLJ Br. in Supp. of Mot. to Dismiss Am. Countercl. 30–31, ECF No. 12-01208 Doc. 17.

U.S.C. § 506(d), that DLJ is not a secured creditor.  US Bank supports this claim for relief by asserting that "[t]he Third Order of Attachment does not create a lien over the Debtors' Properties." Am. Answer and Countercl. 21 ¶ 48, ECF No. 12-01208 Doc. 14.  Again, this is a legal conclusion, which the Court does not accept as true for the purposes of a motion under Rule 12(b)(6), and Count III is likewise dismissed for failure to state a claim.

## IX.    <u>**CONCLUSION**</u>

For all of the foregoing reasons, the Deed is nullity, not an instrument of conveyance. The Court will not interpret, reform, or otherwise enforce it.  US Bank's motion for partial summary judgment is granted, to the extent set forth above.  Counts II and III of the amended counterclaim are dismissed for failure to state a claim.  A separate order will issue.



**Dated: July 30, 2015**
  **Brooklyn, New York**

        **Nancy Hershey Lord**
        **United States Bankruptcy Judge**